May it please the Court, Robert Friedman for Appellant Andrew King. I'm going to try to reserve three minutes for rebuttal. This case involves claims brought under generally applicable state law that two federal agencies have separately determined, that's the National Credit Union Administration and the Consumer Financial Protection Bureau, have separately determined likely violates federal law. And on appeal, Navy Federal does not dispute that the fee is in fact illegal. Nevertheless, Navy Federal argues that Mr. King's claims conflict with federal law and are therefore preempted. To make that argument, Navy Federal advances and the District Court adopted an expansive interpretation of the preemption clause at issue in this case. Under Navy Federal's reading, any state law that relates to credit union fees or any other matter affecting the opening or maintaining of a credit union account is preempted. That broad reading, which applies to generally applicable laws and credit union-specific laws alike, would knock out not just the claims in this case, but also any claim brought under the UCL or another state's consumer protection law, any state antitrust claim, or any even state anti-discrimination claim that involves fees. Nothing in the text or history of 701.35c supports that interpretation. The preemption clause was promulgated in direct response to state laws specifically aimed at lawful credit union activities. For example, a Connecticut law that purported to tell credit unions how they must disclose their account terms. It was not promulgated in response to the application of generally applicable state laws, and it was not promulgated in response to state laws that address conduct illegal under federal law. In two ways, the text of the preemption clause reflects that history and demonstrates that it displaces the type of law that prompted it in the first place. And each of those... Well, counsel, if I can jump in, sorry, on the screen over here. So I'm just trying to follow your argument to the end here. You could have sued for federal law violations, correct? I'm sorry? You could have sued for federal law violations, correct? Well, our claim is based on a federal law violation, one of our theories, but there is no private cause of action under the Consumer Financial Protection Act. So that's why it's a state law claim. So you can't even sue to enjoin it in some way? Well, we're seeking monetary damages. I don't think that we'd have standing to seek an injunction here. So let me ask the follow-up question then. Let's say some states say you shouldn't charge fees, but other states say you must charge fees in this situation. What is the credit union supposed to do? Well, so in that instance, that would be a law that regulates credit union fees. And so that would be preempted under our interpretation of the preemption clause, because it's a law that is specific to credit union activities. It is not a generally applicable law. And that's the type of law that the NCUA had in mind when it promulgated this regulation. So you think that Congress would have wanted to not preempt the UCL, which is a very broad law, but would want to preempt these specific ones? And why would they make that distinction? Well, I think it's a common distinction in preemption schemes. We go through this at Congress will frequently preempt laws that regulate a certain activity, but leave in place generally applicable laws. And if you look at the Wygod case from the Seventh Circuit that we cite, it actually says that when Congress preempts generally applicable laws, that's the exceptional case, not the ordinary case. And the reason is that when there's a law that regulates and is aimed specifically at whatever the subject matter is, that implies a substantive standard, a substantive policy judgment that is different from the one that Congress has put in place. And I just want to be clear that there's two independent bases why the preemption clause doesn't apply here. One is that the UCL is a generally applicable law. But the other is also that our claims here are based on conduct that specifically violates federal law. And those cases, again, at 21 to 22, show that in numerous preemption schemes, when conduct is illegal under federal law, state law can provide a remedy. And that's true for very sensitive areas like the Atomic Energy Act. That's the Silkwood case. It's also true for how federally chartered banks work under national bank preemption. If something's illegal under federal law, states can supply a remedy. And I don't think you have to worry about any real damage being done to the way that federally chartered credit unions operate here, because the NCUA's recent guidance shows that this is how it reads the preemption clause. And they didn't see any tremendous red flags that prevented it from reading it. And if you go back to the original commentary that accompanied the final rule in 1985, what the NCUA said in response to a state agency that asked whether it could go after fees charged to dormant credit union accounts, it said, if those fees are not prohibited by the Federal Credit Union Act regulations, et cetera, then state law is preempted. What that necessarily implies is that if the fees were legal under federal law, then states could supply their own remedy. And again, that's an incredibly common way of preemption schemes working. When it comes to the term regulating, this has a settled meaning in the preemption context. This court in Total TV said that regulating has a limited preemptive intent, and it does not mean related to, and it does not sweep in generally applicable laws. And that's what we have at issue here. That's undisputed on this appeal, that Mr. King's claims proceed under generally applicable law. So to rule for Navy Federal here, this court has to hold the opposite of what it said in Total TV, which is also what the Supreme Court said in Morales when it contrasted between regulating and relating to. And it's also what dictionaries and common parlance tell us, that they have two separate meanings. Because Navy Federal's argument here, that a generally applicable law is displaced, depends solely on equating regulating with relating to. And this court would be the first to offer that holding if it reaches that conclusion. Navy Federal offers only one textual basis for equating regulating with relating to, and that is that the phrase, two federal credit unions, that appears at the end of 701 35C, would be superfluous if Mr. King were correct about the meaning of regulating, that it means specifically directed towards credit unions. But that's wrong for two reasons. The first is the phrase, two federal credit unions, still tells the reader that the law has force and is applicable to state credit unions, including federally chartered state credit unions. And there's a host of federal statutes about federally chartered, excuse me, federally insured state credit unions. And the second is that Navy Federal tacitly admits that if the phrase, two federal credit unions, was not at the end of 35C, then there would be no textual hook for its reading. And if you go back to the original preemption clause as it existed in 1985, this is at page 15 of our reply brief that we lay out the full text of that original regulation, it did not have the phrase, two federal credit unions. It only had the, it ended at the word applicable. So at that time, I think Navy Federal has no textual hook for its reading. And what the NCUA said in 1988 when it added the phrase, two federal credit unions, is that it was not changing the substantive scope of the regulation. So it was not tacitly converting regulating into relating to. So because regulating had the meaning that we ascribed to it when the regulation was, when the preemption clause was first promulgated, it also has that meaning now. And that's the only textual hook for Navy Federal's claim that regulating is equated with relating to under this clause. I want to shift to the other independent limitation in an independent basis for reversal, which is the scope of the phrase such activities in the second sentence of 35C. Judge Owens, this is where we find a textual hook for the fact that state laws can supply their own remedies for conduct that is illegal under federal law. The context of the 35C shows that such activities captures only activity that is lawful under federal law. The first sentence of 35C is authorizing credit unions to engage in certain activities. And those activities must be consistent with other federal law, contractual obligations, et cetera. The second sentence provides protection to such activities and to have congruence. So the first sentence provides authorization. The second sentence provides protection. It shields them from state law. That's Mr. King's reading. Under Navy Federal's reading, although the first sentence provides authorization only to engage in activities that are lawful under federal law and contract obligations, et cetera, the second sentence goes farther and it sweeps in and provides protection for other activities as well, including conduct that is illegal under federal law. There's no indication that that's what the NCUA meant to do. Again, that would be an abnormal approach to preemption, the kind of exceptional case where federal power might be at its height in immigration, for instance. The administrative history also supports our reading. Again, that comment in response to the state agency about going after fees that are charged to dormant credit accounts, the NCUA was clear that that would be impermissible if the fee was not prohibited by federal law. That aligns with Mr. King's reading, not with Navy Federal's reading. Navy Federal does point to different statements in the administrative history, and we walk through those in detail in our reply brief at pages 12 to 18. And I won't repeat that all here, but I do want to emphasize one point, which is that none of those statements address what happens when conduct is lawful versus unlawful under federal law. The only statement that does that is the one that I just discussed about fees on dormant accounts. And the third point I'll make about the scope of the phrase such activities is that it brings this preemption clause into the most common method of dealing with state law. Because supplying a remedy for conduct that's illegal under federal law isn't going to change the way that a credit union can go about conducting its business. So if this court wants to take the narrower path here, that would be it. And that's, again, something that the NCUA said is how it reads the preemption clause in its recent guidance letter. Had the NCUA wanted to go even further, there was a clear way for it to, and to displace all generally applicable laws and also laws that address conduct that's illegal under federal law. There was a clear way for it to express that intent. And I'm going to put to the side that we think going even further would be beyond its authority and would make the regulation invalid. That's another reason not to read the clause that way, that avoidance argument that we make. But had it wanted to express that intent, it could have used terms like relating to or affecting or concerning credit union fees. And, in fact, just one year earlier when it passed a preemption clause for credit union loans, it used that exact language in 701.21. So it knew how to promulgate a broader preemption clause that would reach generally applicable state laws. And there's, in fact, a savings clause with that regulation. And it chose not to use that broader language here. And I'll try to save the rest of my time for rebuttal. Good morning, Your Honors. May it please the Court, David Parker of Hunt and Andrews Kerf. I'm here representing the APA League, Navy Federal Credit Union. The text of 701.35c is clear that it broadly preempts all state laws that regulate share account fees. And that includes the lot issue here. And I'll get to that text in just a moment. But before I do, I think it's important to step back and discuss some of the broader context that hasn't yet been addressed today. Navy Federal is a federal credit union. It's not a state credit union. It's federally chartered. It's overseen by federal regulators, primarily the NCUA. The NCUA used to regulate the fees at issue here. But in the early 1980s, they stopped. And then they drafted this preemption clause to stop states from regulating these fees as well. Now, why did they do that? They did that because federal credit unions are unique. They're not like big banks. They're owned by their members. And that includes Mr. King. And that means a few things. It means they have voting rights and they can vote out the directors if they're not happy. And the other thing is the federal credit unions have no incentive to rip off their members. The money from these fees stays inside the credit union. It does not go to some outside investor as it might in a big bank. Now, that does not mean that federal credit unions are just left to their own devices with these fees. The fees are still subject to other federal law. Can I ask a question about the fees? Do you agree that the fees here are illegal under federal law? We do not. We do not. So my friend on the other side said that in his presentation. We do not agree that they're illegal. We're not contesting for purposes of this appeal that he's adequately alleged that they're illegal, but we do not agree that they are  What about the CFPB's statement that they're unlawful? The 2024 statement. So again, we're not contesting that King has adequately alleged that it's No, but I mean, we have a federal agency that said these types of fees are unlawful. You're contesting that? We would contest that if it goes back down, Your Honor, yes. But I don't think that it's relevant to this appeal. Well, in fact, your client has stopped charging those fees since the CFPB made that statement, correct? Correct. They have stopped charging the fees. Yes. But again, I think that the issue here on appeal is preemption. And even if they were illegal under federal, I mean, first of all, I guess if they're illegal under federal law and CFPB or NCUA wants to come after federal credit unions for charging them, that's still a possibility. They're still well within their rights to do that. But the point here is that what this preemption clause does is prevent states from imposing laws that would regulate these fees. Okay. Well, the argument here is that the California unfair competition law doesn't regulate these fees. It relates to, and therefore, it's outside the preemption clause. Yes, Your Honor. That is one of King's two arguments here. That's his argument on regulating. And on that point, we don't actually have to take the position that it means relating to. So I think it's important to look at this phrase in context, right? We're not just evaluating the phrase or the word regulating in isolation. We're looking at what it is regulating. Here, we're regulating such activities. And so in King's... And such activities means what? Such activities means, according to King, the activities of determining the fees, determining the fees or charges or other matters. And according to Navy Federal Credit Union? Well, that's, I'm sorry, that's according to Navy Federal Credit Union. According to King, it's determining those fees consistent with other federal law, contractual obligations, et cetera. But we're talking about regulating activities in this preemption clause. In King's cases, in Morales and Pilot Life, those preemption clauses, which were in different statutes, we're talking about regulating insurance. So regulating the insurance industry writ large. And what those cases hold is that generally applicable laws don't regulate the insurance industry unless they're specifically directed towards that industry, right? If a generally applicable law just affects an insurance industry to some extent or an insurance company, it's not regulating it. That makes sense. But here, we're talking about regulating such activities, not an industry. So if we look at the California unfair competition law, which King says was violated here, what is that regulating? It's regulating all activities that are unfair business practices. And that includes, according to King, the specific activities here. So if he were right, if the UCL does prohibit this activity, then yes, it is specifically directed towards this activity and all other activities that are unfair business practices. Now, the UCL is not targeting or specifically directed towards federal credit unions. That's a different question. And that is why King specifically directed towards federal credit unions. We agree with that. But that's not what the preemption clause says. It says laws that are regulating these activities. And this law, this UCL, if it does prohibit these activities, then it is regulating those activities. And the policy here, I think, is pretty simple. NCUA was trying to take states out of the picture when it comes to interfering with federal credit unions' ability to charge these fees. Now, under King's reading, and Judge Hinderacher, I believe you were getting at this with your questions, would allow states to regulate these fees or to interfere with these fees, I should say, if they do so with a generally applicable law. And I don't know why they would want to leave that loophole open. Let's take a hypothetical. There could be a state that really wants to get rid of certain fees. And it knows that it can't do that under King's reading with this, you know, specifically targeted law that expressly refers to the fee. But it can do it with a generally applicable law. So it just, you know, sets up an enforcement policy with the state agency to say, go after these fees under these generally applicable laws. And they could do that under King's reading. And there's no reason why NCUA would want that. So I'd like to move, if I could, to the other dispute that we have about the text, which is the such activities phrase. So if you look at the preemption clause at issue here, there are two sentences. The last sentence is the one that provides the preemption. And what it says is, state laws regulating such activities are not applicable to federal credit unions. And before we start picking apart those words, let's just pause for a second. Because on the face of it, that language is very broad. This is not the type of language, your honors, that you use if all you want is basically just conflict preemption. If that's all you want, there are lots of other statutes and regulations that you could model off of. So there are the TISA preemption clauses under both the statute and the regulation there. Those are at 16 to 18 of King's reply. And those preempt state laws that are, quote, inconsistent with TISA, but only to the extent of the inconsistency, that's very clear that Congress and the agency only wanted conflict preemption. That is not how 701.35C is written. And King also says, you know, okay, preemption is a little bit broader than conflict preemption here. There are other ways to get at that type of preemption too. For example, you could preempt state law that is, quote, different from or in addition to federal law. And there are lots of examples of that kind of language, 21 U.S.C. 360K, 7 U.S.C. 136VB, 21 U.S.C. 678. Those are just a few examples of the type of language that you would use. You would not have a sentence that says state laws regulating such activities are not applicable. So let's look more specifically at the text. And the important phrase here is such activities. So if you look at the first sentence in the preemption clause, it describes those activities. It says the activities are determining or determining the types of fees or charges or other matters associated with these share accounts. That's what I'll call the activities clause. The sentence also has what I'll call the consistent with clause. That is in the middle of the sentence, it says consistent with other federal law, contractual obligations, et cetera. This clause is not describing activities. It is describing limits on those activities under other sources of law. What NCUA is doing with this consistent with clause is it's making clear. We are preempting state law. We are not displacing other federal law. We are not displacing contracts. So why did they have to say that? Is that superfluous? No, it's not superfluous because otherwise there could be a question here. There could be an ambiguity as to how far NCUA wants to go. So that's all that they're doing with this consistent with clause. And the only reason that we're here, your honors, standing here today, is because NCUA put that consistent with clause in the middle of the first sentence. And King's argument relies specifically on the order of those terms. He says that the term such in the second sentence refers back to the first sentence. The consistent with clause is in the first sentence. Therefore, it must limit the scope of preemption. Well, if you look at the way that the original version of this preemption clause was phrased, it had the reference to state, I'm sorry, contractual obligations after the phrase such activities. This is on page 22 of our brief. This is the original version from 1985. And what it says after such activity is nothing herein is intended, however, to allow a federal credit union to amend or modify its contract. So this is happening after the phrase such activity. So it is not modifying the scope of the activities here. And that's the whole ballgame here, your honors, because King admits, and he's admitted here today again in argument, that the meaning of this provision did not change when NCUA rephrased it and amended it into its current form. The other thing I'll note is that in this original version, it says nothing at all about other federal law. So there's no argument, I think, that the scope of activities in this original version was limited by other federal law. And again, King admits that this original version is substantively identical to the current version. So that is fatal to his claim. Now, it's not just King admitting this, by the way. It's NCUA itself that said this. If you look at what NCUA said when it amended this regulation into its current form, and King cites this and quotes from this language at pages 11 and 12 in his reply brief, it said when it moved the reference to contractual obligations from the last sentence up into the first sentence, it was simply clarifying the wording, simplifying the wording. It was not changing the scope of preemption at all. And the same thing about other federal law. When it added that phrase, it was not changing the scope of preemption. It was merely, quote, alerting credit unions to the fact that they need to look to these other sources of law to make sure what they're doing is legal. That's exactly what the current clause is doing, too. It's not changing the scope of preemption. It's just alerting credit unions that while you don't have to look to state law when you're determining these fees, you do have to look to other federal law. You do have to look to your contractual obligations. We're not displacing those sources of law. So that should be the end of the analysis. You have a prior version that is incompatible with King's argument about such activities, and he admits that this prior version is substantively identical to the current version. Now, this is evident from the plain text. Can I ask, can I interrupt just quick? So what do we make of the 2024 opinion letter from the, I think it's from the NCUA, that says the Federal Credit Union Act does not preempt state laws that apply to practices of federal credit unions that violate other federal laws, such as the FTC Act or the CFPA? Yes, Your Honor. Well, I think King has told us what we should make of that when he was opposing our motion to file the surreply, and our surreply addresses this at length. But what he said in opposing that is, I'm not arguing for any kind of deference to that statement, not under our and not even any persuasive force under Skidmore. So he's saying that this statement doesn't actually change anything. And the other thing, and he's right, by the way, because this was a statement that was made 30 years after the original preemption clause was promulgated and then amended. It was in a footnote of a guidance that was on a different issue. So it should be given no weight. And if NCUA really feels that this is how the preemption clause should be construed, it cannot amend the preemption clause in a footnote in this guidance. It needs to actually amend the preemption clause through notice and comment. So that's what I would say about the 2024 statement. Now, the last point that I'd like to get to today in my remaining minute is the point that this regulation somehow exceeds the scope of NCUA's authority. Now, King's argument here is both waived and it fails on the merits. So the argument is waived because King said nothing at all about NCUA's authority to promulgate this regulation below. So the way he tries to package this on appeal is that it's an avoidance argument. So it's just an avoidance argument. I didn't have to make it below. It's not just an avoidance argument, Your Honors. This is a direct challenge to NCUA's authority. And that's because King's reading does not avoid the problem that he identifies as being there. So he is saying NCUA can only impose limitations. It can't lift any limitations, including lifting state law. But his reading allows NCUA to do that. His reading does allow NCUA to lift certain state laws, to preempt certain state laws. So his reading doesn't avoid the problem. And the last thing I'll say, Your Honors, is that if you look at the statutory provision that he cites, it actually supports Navy Federal. Because what it says is federal credit unions have the power to set their own terms and conditions for these share accounts unless NCUA says otherwise within limitations prescribed by the board. Well, that is exactly what NCUA is doing with this preemption clause. It's giving federal credit unions the power to set their own terms and conditions free from any state regulation. And so this provision actually supports Navy Federal and not King. And unless there are further questions, I'd like to rest on our brief. Okay. Thank you, Counsel. Thank you. Mr. Freeman, just before you get started, two questions. One, do you agree that the current version and the 1985 version mean the same thing? In other words, the current version was just meant to clarify what the 1985 version meant. And we can look to that because that's what Mr. Parker said. That was one of the things I was going to bring up anyway. Ultimately, this court has to interpret the text as it is, but we think that they have the same meaning, and I'll explain how. The original version didn't include the phrase other federal law, but it did include the term empowered. And the NCUA said that it empowered credit unions to take certain actions. And the NCUA only ever had the authority to empower credit unions to take actions lawful under federal law. And so what the 1988 clarification does is it gets rid of the word empowered, and it adds the phrase other federal law. And you can see that the NCUA always believed that a credit union had to act consistent with federal law, again, in that response to the state agency about fees charged to dormant accounts. So, yes, we think it has the same meaning, but to the extent you think other federal law worked as substantive change, that's what states are going to look to now, what credit unions are going to look to now, what you have to interpret. I do have other points, but you said you had a second question. The second question is the December 2024, we've called it a statement, came in a footnote from CFPB. Do you agree that that should be given a little weight? I think you're referring to the NCUA letter? Yes, excuse me. The NCUA letter should not be deferred to, but it is still a useful indicator here for two reasons. One, it shows that our interpretation aligns with the regulation's text, because if you take maybe federal's argument that it was just an offhand comment, well, then we were just looking at the plain text. That's the conclusion they reached. Two, this is coming from the chairman of the NCUA. He'd been the chairman for five years at the NCUA for even longer. If this was going to raise some sort of red flag that would destroy how credit unions operate, he wouldn't have put it out. So you can, I think, brush aside any concern that you're going to do real damage here by accepting Mr. King's interpretation. I'll try and be quick. Navy Federal argues that it's entitled to kind of special deference because it is not a bank. Our reading gives it more protection than banks. If you look at the Quintero case from our opening brief, under the National Bank Act, to prove preemption, a bank must make an affirmative showing that involves a practical assessment of real-world effects to displace state law. A credit union only has to show that a law is specifically aimed at it. That's an added layer of protection under Mr. King's reading that banks do not enjoy. And, well, I see that I'm out of time. Well, you may finish. Oh, okay. Thank you. The last point that I wanted to make is that Navy Federal now appears to be walking away from the idea that regulating means relating to and says instead that the UCL regulates fees. The UCL does not regulate fees. It is not specifically directed towards credit union fees. And Navy Federal, in fact, argues that that's all that it's doing in its superfluousness argument. The UCL is a generally applicable statute about unfair, unlawful, and deceptive business practices. So if Navy Federal is now accepting our – But it's incredibly broad. The way when I read it, I was like, that's a very broad law. That could mean a lot of different things. So couldn't it – I mean, it seems like it could start to regulate federal credit unions in a lot of different ways that maybe they weren't intended to be regulated because they're federal credit unions and they have boards that oversee them and so forth. It just seems like it could work into federal credit unions in a lot of ways. So I'd make three points in response. First, I just want to reiterate that because we're dealing with conduct that's illegal under federal law, you don't even need to reach this argument. But second, if a UCL decisional rule were to be specific to credit unions and regulate in that way, then under our reading, that rule would be displaced. It would be preempted. That's what the UNUM decision that we cite in our reply brief teaches. It doesn't matter just that the law is generally applicable. Also, the rule of decision has to be generally applicable. So that would address Your Honor's concern. And then the third point I'll make is that if there were some generally applicable rule that did extreme damage to credit unions, let's say that the UCL came with a statutory penalty of $10 million for every violation, no matter how generally applicable, it would not be preempted under the preemption clause. But Navy Federal can always appeal to the statute itself and implied conflict preemption and argue that there's an actual interference with Congress's objectives. That's what banks have to do, and that is still an option available to banks, excuse me, to credit unions. But we're talking about what's displaced under the preemption clause here, and the preemption clause does not displace generally applicable laws. All right. Thank you, counsel. King v. Navy Federal Credit Union is submitted.
judges: WARDLAW, OWENS, Hinderaker